UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN NORRIS,

        Petitioner,

                                    CASE NO. 2:12-CV-14915
  v.                                JUDGE SEAN F. COX
                                    MAGISTRATE JUDGE PAUL J. KOMIVES

JOHN PRELESNIK,

        Respondent.

_____/

**REPORT AND RECOMMENDATION ON PETITIONER'S APPLICATION FOR THE
WRIT OF HABEAS CORPUS (docket #1)**

*Table of Contents*

I.     RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
II.    REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
      A.    *Procedural History* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
      B.    *Factual Background Underlying Petitioner's Conviction* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
      C.    *Procedural Default* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
      D.    *Standard of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
      E.    *Other Acts Evidence (Claim I)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
      F.    *Prosecutorial Misconduct/Ineffective Assistance of Counsel (Claim II)* . . . . . . . . . . . . . . . . . 11
            1.    *Prosecutorial Misconduct* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
                a. Clearly Established Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
                b. Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
            2.    *Ineffective Assistance* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
                a. Clearly Established Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
                 b. Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
      G.    *Newly Discovered Evidence Claims (Claims IV-VI)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
            1.    *Actual Innocence* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
            2.    *Weight and Sufficiency of the Evidence* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
            3.    *Altered Evidence* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
            4.    *Obstruction of Justice Charge* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28
            5.    *Brady* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29
      H.    *Recommendation Regarding Certificate of Appealability* . . . . . . . . . . . . . . . . . . . . . . . . . . . 33
            1.    *Legal Standard* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33
            2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35
      I.     *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36
III.   NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

I.      RECOMMENDATION: The Court should deny petitioner's application for the writ of habeas corpus and should deny petitioner a certificate of appealability.

II.     REPORT:

A.      *Procedural History*

        1.      Petitioner John Norris is a state prisoner, currently confined at the Chippewa Correctional Facility in Kincheloe, Michigan.

        2.      On February 12, 2008, petitioner was convicted of three counts of first degree criminal sexual conduct with a person 13-15 years old (CSC-I), MICH. COMP. LAWS § 750.520b(1)(B)(I); obstruction of justice, MICH. COMP. LAWS § 750.505a; possession of a firearm by a felon, MICH. COMP. LAWS § 750.224f; and possession of a firearm during the commission of a felony, MICH. COMP. LAWS § 750.227b, following a jury trial in the Wayne County Circuit Court. On March 4, 2008, he was sentenced as a fourth habitual offender, MICH. COMP. LAWS § 769.12, to concurrent terms of 20-50 years' imprisonment on each CSC-I conviction, 10-50 years' imprisonment on the obstruction of justice conviction, and 5-50 years' imprisonment on the felon in possession conviction, as well as to a mandatory consecutive term of 2 years' imprisonment on the felony firearm conviction.

        3.      Petitioner appealed as of right to the Michigan Court of Appeals raising, through counsel, the following claims:

        I.      APPELLANT WAS DENIED A FAIR TRIAL BY THE ADMISSION OF REPEATED EVIDENCE OF PRIOR BAD ACTS OF DOMESTIC VIOLENCE.

        II.     THE PROSECUTOR VIOLATED APPELLANT'S STATE AND FEDERAL CONSTITUTIONAL DUE PROCESS RIGHTS TO A FAIR TRIAL BY TELLING THE JURY THAT SHE KNEW "THE TRUTH IN THIS CASE", VOUCHING FOR THE CREDIBILITY OF THE

> COMPLAINING WITNESS, CALLING APPELLANT'S ALIBI WITNESS "NOT TRUTHFUL" AND ACCUSING DEFENSE COUNSEL OF MISLEADING THE JURY. DEFENSE COUNSEL WAS CONSTITUTIONALLY INEFFECTIVE IN FAILING TO OBJECT TO THE PROSECUTOR'S MISCONDUCT.

The court of appeals found no merit to petitioner's claims, and affirmed his convictions and sentences. *See People v. Norris*, No. 284566, 2009 WL 2605362 (Mich. Ct. App. Aug. 25, 2009) (per curiam).

4.     Petitioner sought leave to appeal these issues to the Michigan Supreme Court. The Supreme Court denied petitioner's application for leave to appeal in a standard order. *See People v. Norris*, 485 Mich. 1012, 775 N.W.2d 771 (2009).

5.     Petitioner subsequently filed a motion for relief from judgment in the trial court pursuant to MICH. CT. R. 6.500-.508, raising the following claims:

> I.     WHERE NEWLY DISCOVERED EVIDENCE CLEARLY DEMONSTRATES INSUFFICIENCY OF FACTS RELIED UPON FOR THE CONVICTION AND SHOWS ACTUAL INNOCENCE, MR. NORRIS' CONVICTIONS MUST BE OVERTURNED.

> II.     NEW EVIDENCE REVEALS DEFENDANT'S CONVICTION(S) ARE AGAINST THE GREAT WEIGHT OF THE EVIDENCE WHERE THE TAPE RECORDING OF DEFENDANT'S CONVERSATION(S) WAS PURPOSELY ALTERED AND PRESENTED UNDER FALSE PRETENSES, AND A TRANSCRIPT OF IT PRODUCED, VIOLATING DEFENDANT'S DUE PROCESS RIGHT TO A FAIR TRIAL, SUPPORTING CONVICTION WITH EVIDENCE PRESENTED OUT OF PROPER CONTEXT OR TIME FRAME.  U.S. CONST, AM XIV; MI CONST 1963, ART 1, § 20.

> III.     NEW EVIDENCE DEMONSTRATES NO SUPPORT FOR OBSTRUCTION OF JUSTICE WHERE THERE WAS A LACK OF ELEMENTS PRESENTED IN JURY INSTRUCTION AS PRESENTED BY THE PROSECUTION AND RELIED UPON BY THE TRIAL COURT AND A MORE SPECIFIC CHARGE SHOULD HAVE BEEN BROUGHT BY THE PROSECUTION.  US CONST AM XIV.

3

IV.   NEW EVIDENCE SUPPORTS THAT *BRADY* VIOLATIONS OCCURRED
WHERE THE PROSECUTION WAS AWARE OF KEY EVIDENCE
NEEDED BY THE DEFENSE AT TRIAL BUT FAILED TO ALLOW
DEFENDANT DISCOVERY AND UNFAIRLY STRENGTHENED ONLY
THE PROSECUTOR'S THEORY OF THE CASE THROUGH THE
DENIAL.  US CONST. AM XIV.

On May 16, 2011, the trial court denied petitioner's motion for relief from judgment, concluding that

petitioner's claims were barred either by Rule 6.508(D)(2) because they had already been rejected

on appeal, or were barred by Rule 6.508(D)(3) because they could have bene raised on direct appeal.

*See People v. Norris*, No. 07-020805-01 (Wayne County, Mich., Cir. Ct. May 16, 2011) [hereinafter

"Trial Ct. op."].  The Michigan Court of Appeals and Michigan Supreme Court denied petitioner's

applications for leave to appeal in standard orders.  *See People v. Norris*, 493 Mich. 869, 821

N.W.2d 553 (2012); *People v. Norris*, No. 306732 (Mich. Ct. App. May 2, 2012).

6.     Petitioner, proceeding *pro se*, filed the instant application for a writ of habeas corpus

on November 5, 2012.  As grounds for the writ of habeas corpus, he raises the six claims that he

raised in the state courts.

7.     Respondent filed his answer on May 20, 2013.  He contends that all of petitioner's

claims are both meritless and barred by petitioner's procedural default in the state courts.

Respondent also contends that petitioner's sixth claim is unexhausted.

8.     Petitioner filed a reply to respondent's answer on July 5, 2013.

B.     *Factual Background Underlying Petitioner's Conviction*

Petitioner's convictions arise from the sexual assault of his then-girlfriend's daughter.  The

evidence adduced at trial was summarized by the Michigan Court of Appeals:

In February 2007, the 13-year-old victim had a conversation with defendant,
her mother's live-in boyfriend, about a boy she liked, and they hugged during the
conversation. The victim testified that defendant came to her room that night,

4

removed her clothing, and inserted his penis in her vagina; he used his hands to widen her vagina in order to further penetrate her. The victim further testified that in July 2007, defendant woke her and directed her to a hallway, where they kissed and engaged in sexual intercourse, cunnilingus, and fellatio. Defendant told the victim that he loved her, and also cautioned her to be quiet so she would not wake her mother. The victim testified that on August 22, 2007, at about 2:00 a.m., she was leaving the bathroom and saw defendant, who was naked. Defendant took her in a hallway, removed her clothing, and engaged in sexual intercourse with her. The victim's mother testified that she had been sleeping in the living room, got up to use the bathroom, turned on a light, and saw defendant engaging in sexual intercourse with the victim. The victim went to her room, defendant and the victim's mother struggled and argued, and defendant announced that he was leaving.

The victim's mother testified that she subsequently heard the clicking of a gun, saw defendant holding a gun to his stomach, and heard defendant say that he should kill himself. Defendant then walked to the side door and fired three or four gunshots into the air. Defendant returned, apologized to the victim's mother, and said that someone had to "do it" with the victim, but denied actually penetrating the victim's vagina. The victim's mother indicated that from about 2:00 a.m. until 6:00 a.m., she sat in the living room with defendant, who was still naked and armed with a gun. At 6:00 a.m., defendant directed her to accompany him to his aunt's house, and she complied because she was afraid. En route, defendant again apologized and explained that he had to have sex with the victim to prevent her from engaging in sex with someone else. At this point, defendant's gun was holstered at his waist. They remained at the aunt's house until 3:00 p.m. The victim's mother explained that defendant sent her out for food, but she did not contact the police because of her fear of defendant. After returning home, the victim's mother slept until the next day. That morning, defendant left the house with the victim's mother's sons, brought them back about an hour later, and left. The victim's mother explained that when she was sure that defendant was gone, she went to the police station to report the sexual assault; she did not take the victim because she did not think that she would cooperate.

The police questioned the victim, who denied having sex with defendant, and arrested defendant on firearm charges. When the victim's mother returned home, the victim was not there. The next day or so, the victim's mother reported her missing and the police located her with defendant's brother. During a subsequent medical examination, the victim admitted to hospital personnel that she had sex with defendant. Days later, in a Kids Talk interview, the victim denied having sex with defendant. At trial, the victim testified that she lied because she did not want defendant to get into trouble. The victim's mother testified that after defendant was released on bond, he called her several times, some of which she recorded. During the calls, defendant attempted to scare the victim's mother, cautioned her to refrain from going to court, and offered her money.

The defense denied any wrongdoing. The defense argued that the victim's mother fabricated the charges to remove defendant from their home in order to steal

5

his property, and also because she was upset that he had a wife and other girlfriends. On cross-examination, the victim's mother testified that after defendant's arrest, she took marital property from their home, although she acknowledged that there was no marital record for her and defendant. The defense also argued that the victim had repeatedly denied the allegations and, during defendant's initial incarceration for the firearm charges, the victim's mother intimidated the victim and caused her to change her statement. The defense presented defendant's current girlfriend, who testified that defendant was not married to the victim's mother, and that on August 23, 2007, between 9:00 and 11:00 a.m., she was with defendant. Defendant's sister-in-law also testified that defendant was married to another woman, and that the victim's mother was aware of defendant's marriage.

*Norris*, 2009 WL 2605362, at *1-*2.

C.   *Procedural Default*

Respondent contends that each of petitioner's claims is barred by his procedural default in the state courts. The Court should decline to resolve these arguments, and should instead proceed to the merits of the claims. While procedural issues in a habeas case should ordinarily be resolved first, the procedural default doctrine is not jurisdictional, and "judicial economy sometimes dictates reaching the merits of [a claim or claims] if the merits are easily resolvable against a petitioner while the procedural bar issues are complicated." *Barrett v. Acevedo*, 169 F.3d 1155, 1162 (8th Cir. 1999) (internal citations omitted); *see also*, *Lambrix v. Singletary*, 520 U.S. 518, 524-25 (1997) (noting that procedural default issue should ordinarily be resolved first, but denying habeas relief on a different basis because resolution of the default issue would require remand and further judicial proceedings); *Walter v. Maass*, 45 F.3d 1355, 1360 n.6 (9th Cir. 1995). Because it is clear that these claims are without merit, the Court may deny them on this basis without resolving respondent's exhaustion and procedural default arguments.

D.   *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by

6

the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No.

104-132, 110 Stat. 1214 (Apr. 24, 1996). *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997).

Amongst other amendments, the AEDPA amended the substantive standards for granting habeas

relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning."

*Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002). "A

state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts

the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are

materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a

result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam)

(quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535

U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court

to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme]

Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*,

539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694.

However, "[i]n order for a federal court to find a state court's application of [Supreme Court]

7

precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409. As the Supreme Court has explained, the standard for relief under § 2254(d) "is difficult to meet, [and] that is because it was meant to be." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011). As the Court explained, "[s]ection 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice system,' not a substitute for ordinary error correction through appeal." *Id*. (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in the judgment)). Thus, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 786-87.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412). The relevant "clearly established law" is the law that existed at the time of the last state court decision to issue a reasoned decision on the claim, *see Greene v. Fisher*, 132 S. Ct. 38,

8

44-45 (2011), and in evaluating the reasonableness of that decision a federal habeas court is limited to the record that was before the state court at the time of its decision, *see Cullen v. Pinholster*, 131 S. Ct. 1388, 1398-99 (2011).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16. Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).[1]

E.      *Other Acts Evidence (Claim I)*

---

[1]Although each of petitioner's claims is arguably defaulted, the deferential standard of review set forth in § 2254(d) is applicable. With respect to the two claims raised on direct appeal, the Michigan Court of Appeals determined that the claims were barred by petitioner's failure to object at trial, but further considered the merits of the claims in determining whether petitioner could establish plain error. With respect to the claims raised in petitioner's motion for relief from judgment, the trial court rejected these claims on both procedural grounds and, alternatively, on the merits. The Sixth Circuit has "squarely endorsed the view that 'a federal constitutional claim reviewed by a state court for "plain error" can be considered "adjudicated on the merits" for the purpose of receiving deference under AEDPA.'" *Bond v. McQuiggan*, 506 Fed. Appx. 493, 498 n.2 (6th Cir. Nov. 29, 2012) (quoting *Fleming v. Metrish*, 556 F.3d 520, 532 (6th Cir. 2009)). Further, where a state court addresses the merits as an alternative ground for decision notwithstanding its application of a procedural bar, the alternative merits adjudication is considered "on the merits" for purposes of § 2254(d) and is entitled to deference under the AEDPA. *See Brooks v. Bagley*, 513 F.3d 618, 624-25 (6th Cir. 2008); *see also*, *Rolan v. Coleman*, 680 F.3d 311, 319-20 (3d Cir. 2012) (citing cases). Thus, the AEDPA standard of review set forth in § 2254(d) applies to petitioner's arguably defaulted claims.

Petitioner first contends that he was denied a fair trial by the introduction of evidence that he had committed prior acts of domestic violence against Taylor. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

It is well established that habeas corpus is not available to remedy a state court's error in the application of state law. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). Thus, unless a violation of a state's evidentiary rule results in the denial of fundamental fairness, an issue concerning the admissibility of evidence does not rise to the level of a constitutional magnitude. *See Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988); *Davis v. Jabe*, 824 F.2d 483, 487 (6th Cir. 1987). "[A] federal habeas court has nothing whatsoever to do with reviewing a state court ruling on the admissibility of evidence under state law. State evidentiary law simply has no effect on [a court's] review of the constitutionality of a trial, unless it is asserted that the state law itself violates the Constitution." *Pemberton v. Collins*, 991 F.2d 1218, 1223 (5th Cir. 1993). As the Sixth Circuit has noted, "[e]rrors by a state court in the admission of evidence are not cognizable in habeas proceedings unless they so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental right to a fair trial." *Kelly v. Withrow*, 25 F.3d 363, 370 (6th Cir. 1994). In short, "[o]nly when the evidentiary ruling impinges on a specific constitutional protection or is so prejudicial that it amounts to a denial of due process may a federal court grant a habeas corpus remedy." *Barrett v. Acevedo*, 169 F.3d 1155, 1163 (8th Cir. 1999); *see also*, *Coleman v. Mitchell*, 244 F.3d 533, 542 (6th Cir. 2001). Where a specific constitutional right–such as the right to confront witnesses or to present a defense–is not implicated, federal habeas relief is available only if the allegedly erroneously admitted evidence "is

10

almost totally unreliable and . . . the factfinder and the adversary system will not be competent to uncover, recognize, and take due account of its shortcomings." *Barefoot v. Estelle*, 463 U.S. 880, 899 (1983).

As noted above, the issue here is not whether this evidence was properly admitted under the Michigan Rules of Evidence, but rather whether petitioner was denied a fair trial by the introduction of this evidence. This being the case, petitioner is not entitled to habeas relief even if the evidence was not properly admitted under Rule 404(b). Both the Supreme Court and the Sixth Circuit have repeatedly held that a defendant is not denied a fair trial by the admission of prior bad acts evidence which is relevant in the defendant's trial. *See Estelle*, 502 U.S. at 69-70; *Dowling v. United States*, 493 U.S. 342, 353-54 (1990); *Coleman v. Mitchell*, 268 F.3d 417, 439-40 (6th Cir. 2001); *Pennington v. Lazaroff*, 13 Fed. Appx. 228, 232 (6th Cir. 2001) (per curiam) (unpublished); *Manning v. Rose*, 507 F.2d 889, 893-95 (6th Cir. 1974). In short, "[t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence," *Bugh*, 329 F.3d at 512, and thus petitioner is not entitled to habeas relief on this claim.

F.    *Prosecutorial Misconduct/Ineffective Assistance of Counsel (Claim II)*

Petitioner next contends that he was denied a fair trial by the prosecutor's improper statements, and that his trial counsel was ineffective for failing to object to the prosecutor's misconduct. The Court should conclude that petitioner is not entitled to habeas relief on these claims.

1.    *Prosecutorial Misconduct*

a. *Clearly Established Law*

11

For habeas relief to be warranted on the basis of prosecutorial misconduct, it is not enough that the prosecutor's conduct was "undesirable or even universally condemned." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). Rather, the misconduct must have "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id.* (internal quotation omitted). *Darden* constitutes "[t]he 'clearly established Federal law' relevant" to a prosecutorial misconduct claim. *Parker v. Matthews*, 132 S. Ct. 2148, 2153 (2012) (per curiam). "[T]he touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982). "[T]he *Darden* standard is a very general one, leaving courts 'more leeway . . . in reaching outcomes in case-by-case-determinations.'" *Parker*, 132 S. Ct. at 2155 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). In reviewing whether a prosecutor has deprived a defendant of a fair trial, a court may not consider the prosecutor's conduct in isolation, but must the conduct in the context of the entire proceedings. *See Brown v. Payton*, 544 U.S. 133, 144 (2005); *United States v. Young*, 470 U.S. 1, 11 (1985); *Donnelly v. DeChristoforo*, 416 U.S. 636, 645 (1974). Even on direct review, where AEDPA deference does not apply, "a criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone." *Young*, 470 U.S. at 11.

*b. Analysis*

Petitioner contends that the prosecutor improperly vouched for her case and for the credibility of the complainant when she said that she knew "the truth in this case" and that the complainant "told you the truth." The Michigan Court of Appeals, reviewing the claim for plain error, rejected it, explaining:

> Viewed in context, the challenged remarks did not suggest that the prosecutor had special knowledge that the victim was credible. Rather, the prosecutor's argument

was focused on refuting defense counsel's assertions during trial and closing argument that the victim fabricated the charges against the defendant, and that her testimony was inconsistent and not credible. In making the challenged remarks, the prosecutor urged the jury to evaluate the evidence, discussed the consistency of the victim's testimony, and argued that there were reasons from the evidence to conclude that she was credible. A prosecutor is free to argue from the facts that a witness is credible.

*Norris*, 2009 WL 2605362, at \*5. This determination was reasonable.

Improper vouching occurs either (1) "when a prosecutor supports the credibility of a witness by indicating a personal belief in the witness's credibility thereby placing the prestige of the [prosecutor's office] behind that witness," or (2) through "comments that imply that the prosecutor has special knowledge of facts not in front of the jury." *United States v. Francis*, 170 F.3d 546, 550 (6th Cir. 1999); *see also*, *United States v. Emuegbunam*, 268 F.3d 377, 404 (6th Cir. 2001).[2] Here, the prosecutor did neither. During closing argument, the prosecutor extensively explained to the jurors the tools they should use in evaluating the credibility of the witnesses. *See* Trial Tr., dated 2/11/08, at 179-80. She then discussed in detail the testimony of the witnesses, and the reasons why the jury should consider the complainant and her mother to be credible. *See id.* at 180-87. Responding to defense counsel's attack on the victim's credibility based on her previously giving different statements to the police denying any sexual assault, the prosecutor explained that the testimony showed that the victim cared for petitioner and tried to protect him, but when she was finally placed under oath she told the truth. *See id.* at 218. In each instance, the prosecutor did not express a personal belief in the victim's credibility or allude to any facts that were not before the jury. Rather, the prosecutor merely argued that the evidence itself showed that the victim and her

---

[2]Some cases referring to only the first type of comment as "vouching" and describe the second type of comment as "bolstering." *See Francis*, 170 F.3d at 551.

mother were credible.  The prosecutor's comments were merely a fair characterization of the evidence presented to the jury based on her summation of that evidence.  As such, they did not constitute impermissible vouching for the credibility of the witnesses or the guilt of petitioner.  *See, e.g.*, *Nichols v. Scott*, 69 F.3d 1255, 1283 (5th Cir. 1995) (comment "is permissible to the extent that it draws a conclusion based solely on the evidence presented.") (internal quotation omitted); *United States v. Grey Bear*, 883 F.2d 1382, 1392 (8th Cir. 1989); *Martin v. Foltz*, 773 F.2d 711, 717 (6th Cir. 1985) (prosecutor may argue permissible inferences from the evidence).

Petitioner also contends that the prosecutor committed misconduct by telling the jury that petitioner's alibi witness lied.  The court of appeals rejected this claim, explaining that

> [t]he prosecutor's remarks conveyed her contention that, based on the evidence, any defense based on defendant's girlfriend's testimony was suspect, and not credible. When making the challenged remarks, the prosecutor asked the jury to evaluate the witness's testimony and to consider her lengthy delay in reporting the alibi, as well as her motives for lying.  A prosecutor is free to argue permissible inferences from the evidence as they relate to her theory of the case, including that a witness is not worthy of belief, and the prosecutor is not required to phrase her arguments and inferences in the blandest possible terms.

*Norris*, 2009 WL 2605362, at *5.  This determination was reasonable.  The prosecutor did indeed preface her remarks regarding petitioner's witnesses by stating that "there's no doubt in my mind that those two witnesses that you saw today, came in here and lied to help this defendant."  Trial Tr., dated 2/11/08, at 187.  This statement, however, was immediately followed by a discussion of how the evidence showed that the victim lied because she delayed in reporting her alibi and had a motive to lie for petitioner.  *See id.* at 187-88.  In these circumstances, the prosecutor's comments did not amount to prejudicial misconduct.  *See Cristini v. McKee*, 526 F.3d 888, 901-02 (6th Cir. 2008).

Finally, petitioner contends that the prosecutor deprived him of a fair trial by accusing defense counsel of misleading and lying to the jury.  During rebuttal argument, the prosecutor made

14

the following comments:

> Further, [defense counsel] twice, during [the victim's] testimony–and I don't think it's a stretch to say he misled you.  He tried to get her to get up here and say you lied over in court under oath, didn't you.  And he'd asked her two very very small questions.  Wouldn't want to go on farther past that.  Then when I got up there and asked her, yeah, I clarified it with my next question and my next question.  So the idea that she wasn't truth ful over at court is not something he can even suggest to you.
>
> * * * *
>
> The defendant's own words, his own words in this transcript, contradict that lie that [defense counsel] is trying to sell you.  His own words.

Trial Tr., dated 2/11/08, at 214-15, 217.  The court of appeals rejected petitioner's claim, explaining that even if the prosecutor's remarks were improper, petitioner could not show that he was denied a fair trial:

> The prosecutor's two brief, isolated remarks were focused on refuting defendant's claim that the victim's trial testimony was inconsistent with her preliminary testimony, and expressed her contention that defense counsel's suggestion ignored the evidence.  Although the prosecutor made remarks directed at defense counsel, the crux of the argument dealt with the testimony and, therefore, the jury's focus remained on the evidence.  Further, defendant's right to a fair trial was protected by the court's instructions that the lawyers' statements and arguments are not evidence[,] that the jury was to decide the case based only on the properly admitted evidence, and that it was to follow the court's instructions.

*Norris*, 2009 WL 2605362, at *6.  This determination was reasonable.  The prosecutor's comments were based on the testimony introduced at trial, and were directed at rebutting defense counsel's characterization of the evidence.  The comment falls far short of even more egregious comments which have been held not to deprive a defendant of a fair trial.  *See Kappos v. Hanks*, 54 F.3d 365, 367-68 (7th Cir. 1995) (petitioner not denied a fair trial where prosecutor referred to him as a "murderer" and "artful liar"); *See United States v. August*, 984 F.2d 705, 714-15 (6th Cir. 1992) (on direct review of federal conviction, prosecutor's comment that defense counsel was trying to trick the jury did not rise to the level of prosecutorial misconduct, noting that "[a] prosecutor commenting

that the defense is attempting to trick the jury is a permissible means of arguing so long as those comments are not overly excessive or do not impair the search for truth."); *Lindgren v. Lane*, 925 F.2d 198, 204 (7th Cir. 1991) (prosecutor's comments that defense theory was rife with inconsistencies, that defense counsel pulled "these inconsistencies like a magician pulls rabbits out of his hats," and that defense counsel was trying to "trick" the jury with "illusions" were not so egregious as to warrant habeas relief); *Irwin v. Singletary*, 882 F. Supp. 1036, 1043-44 (M.D. Fla. 1995) (habeas relief not warranted based on prosecutor's statement during closing argument that defendant was "grasping at straws").

In short, the Michigan Court of Appeals thoroughly analyzed each of petitioner's prosecutorial misconduct claims, applying the appropriate due process test under *Darden*. For the reasons set forth above, the Michigan Court of Appeals's application of that test was reasonable. "[B]ecause the *Darden* standard is a very general one, leaving courts 'more leeway . . . in reaching outcomes in case-by-case determinations,' [this Court] ha[s] no warrant to set aside the [Michigan Court of Appeals's] conclusion." *Parker*, 132 S. Ct. at 2155 (citation omitted) (quoting *Yarborough*, 541 U.S. at 664). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on his prosecutorial misconduct claims.

2.    *Ineffective Assistance*

Petitioner relatedly argues that his trial counsel was ineffective for failing to object to the prosecutor's allegedly improper comments. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

a.  *Clearly Established Law*

The Sixth Amendment right to counsel and the right to effective assistance of counsel protect

16

the fundamental right to a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense. *Id*. at 687. These two components are mixed questions of law and fact. *Id*. at 698. Further, "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697. If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.* With respect to the performance prong of the *Strickland* test, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance. *See id*. at 689; *see also O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). "[D]efendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690. With respect to the prejudice prong, the reviewing court must determine, based on the totality of the evidence before the factfinder, "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id*. at 695. It is petitioner's burden to establish the elements of his ineffective assistance of counsel claim. *See United States v. Pierce*, 63 F.3d 818, 833 (6th Cir. 1995) (petitioner bears the burden of establishing counsel's ineffectiveness); *Lewis v. Alexander*, 11 F.3d 1349, 1352 (6th Cir. 1993) (same).

As the Supreme Court has recently explained, *Strickland* establishes a high burden that is

17

difficult to meet, made more so when the deference required by § 2254(d)(1) is applied to review

a state court's application of *Strickland*:

> "Surmounting Strickland's high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. ----, ----, 130 S.Ct. 1473, 1485, 176 L.Ed.2d 284 (2010). An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the Strickland standard must be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten the integrity of the very adversary process the right to counsel is meant to serve. *Strickland*, 466 U.S., at 689-690, 104 S.Ct. 2052. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence." *Id*., at 689, 104 S.Ct. 2052; *see also Bell v. Cone*, 535 U.S. 685, 702, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002); *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom. *Strickland*, 466 U.S., at 690, 104 S.Ct. 2052.
>
> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," *id*., at 689, 104 S.Ct. 2052; *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles*, 556 U.S., at ----, 129 S.Ct. at 1420. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at ----, 129 S.Ct. at 1420 . Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

*Harrington v. Richter*, 131 S. Ct. 770, 788 (2011).

### b.  Analysis

Petitioner contends that trial counsel was ineffective for failing to object to the instances of

prosecutorial misconduct discussed above.  This claim is without merit.  As explained above, the

comments petitioner contends were improper were not, in fact, improper, and thus any objection to

those questions or comments would have been without merit.  It is well established that counsel

cannot be deemed ineffective for failing to raise a meritless objection. *See Bradley v. Birkett*, 192 Fed. Appx. 468, 475 (6th Cir. 2006); *Anderson v. Goeke*, 44 F.3d 675, 680 (8th Cir. 1995); *Burnett v. Collins*, 982 F.2d 922, 929 (5th Cir. 1993). Further, as explained above, any comments that were improper were not sufficiently prejudicial to deprive petitioner of a fair trial. It therefore follows that petitioner was not prejudiced by counsel's failure to object to the comments. *See White v. Withrow*, No. 00-CV-74231, 2001 WL 902624, at *12 (E.D. Mich. June 22, 2001) (Rosen, J.) (citing *United States v. Nwankwo*, 2 F. Supp. 2d 765, 770 (D. Md. 1998)) (no prejudice from counsel's failure to object to prosecutorial misconduct where prosecutor's comments did not deprive petitioner of a fair trial). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

G.    *Newly Discovered Evidence Claims (Claims IV-VI)*

The remainder of petitioner's claims relate to his newly discovered evidence. The Court should conclude that petitioner is not entitled to habeas relief on these claims.

1.    *Actual Innocence*

To the extent petitioner claims that his newly discovered evidence establishes that he is actually innocent, he is not entitled to habeas relief on this claim. A writ of habeas corpus may be granted "only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Thus, the existence of new evidence, standing alone, is not a basis for granting the writ. As the Supreme Court has explained: "Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Herrera v. Collins*, 506 U.S. 390, 400 (1993); *see also*, *id*. at 404 (claim of

actual innocence is "not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise [procedurally] barred *constitutional* claim considered on the merits.") (emphasis added); *Schlup v. Delo*, 513 U.S. 298, 314-16 (distinguishing, in part, *Herrera* because in this case the petitioner "accompanie[d] his claim of innocence with an assertion of constitutional error at trial."); *Townsend v. Sain*, 372 U.S. 293, 317 (1963) ("Of course, such evidence must bear upon the constitutionality of the applicant's detention; the existence merely of newly discovered evidence relevant to the guilt of a state prisoner is not a ground for relief on federal habeas corpus."), *overruled in part on other grounds*, *Keeney v. Tamayo-Reyes*, 504 U.S. 1 (1992). Thus, the newly discovered evidence, standing alone, provides no basis for habeas relief. *See Cress v. Palmer*, 484 F.3d 844, 854 (6th Cir. 2007); *Wright v. Stegall*, 247 Fed. Appx. 709, 711 (6th Cir. 2007).[3]

Further, even if such a claim were cognizable, petitioner's evidence falls far short of that necessary to establish that he is innocent. In *Herrera*, without elaborating further, the Court noted

---

[3]In *Herrera* and again in *House v. Bell*, 547 U.S. 518 (2006), the Supreme Court noted that it might be the case that "in a capital case a truly persuasive demonstration of 'actual innocence' made after trial would render the execution of a defendant unconstitutional and warrant federal habeas relief," but explicitly declined to determine whether this is, in fact, the constitutional rule. *Herrera*, 506 U.S. at 417; *see also*, *House*, 547 U.S. at 555. This rule affords no basis for relief for petitioner, however. First, as *Herrera* makes clear this rule is limited to the context of executing an innocent person, and has no applicability in a non-capital case. *See Hodgson v. Warren*, 622 F.3d 591, 601 (6th Cir. 2010); *Wright*, 247 Fed. Appx. at 711. Second, because the Supreme Court has recognized that the question whether there exists a "federal constitutional right to be released upon proof of 'actual innocence' . . . is an open question," *District Attorney's Office for the 3d Jud. Dist. v. Osborne*, 129 S. Ct. 2308, 2321 (2009), a state court's failure to grant relief on the basis of actual innocence cannot be contrary to or an unreasonable application of any clearly established federal law under § 2254(d)(1). *See Reyes v. Marshall*, No. CV 10-3931, 2010 WL 6529336, at *3 (Aug. 23, 2010), *magistrate judge's report adopted*, 2011 WL 1496376 (C.D. Cal. Apr. 14, 2011). *See generally*, *Murdoch v. Castro*, 609 F.3d 983, 994 (9th Cir. 2010) (state court's failure to grant relief on basis which Supreme Court has recognized is an open question cannot be unreasonable application of clearly established law); *Smith v. Hofbauer*, 312 F.3d 809, 817 (6th Cir. 2002) (same).

that even if a free-standing claim of innocence were cognizable on habeas review, "the threshold showing for such an assumed right would necessarily be extraordinarily high." *Herrera*, 506 U.S. at 417.  In *Schlup*, the Court elaborated on the showing required to establish "actual innocence" for purposes of overcoming a procedural bar to consideration of a constitutional claim.  The Court explained that, to establish actual innocence, the petitioner must "show that a constitutional violation has probably resulted in the conviction of one who is actually innocent.  To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Schlup*, 513 U.S. at 327 (internal citation and quotation omitted).  The Supreme Court has also explained that a petitioner cannot establish his actual innocence merely be rehashing his innocence claims raised in the state courts and relying on the evidence adduced at trial.  If he could, federal habeas review would become nothing more than a second trial on the merits, something the Supreme Court has repeatedly admonished the federal courts to avoid. *See Milton v. Wainwright*, 407 U.S. 371, 377 (1972) ("The writ of habeas corpus has limited scope; the federal courts do not sit to re-try state cases *de novo*[.]").  Thus, "to be credible, [a claim of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence that was not presented at trial." *Schlup*, 513 U.S. at 324.  "Examples of evidence which may establish factual innocence include credible declarations of guilt by another, trustworthy eyewitness accounts, and exculpatory scientific evidence." *Pitts v. Norris*, 85 F.3d 348, 350-51 (8th Cir. 1996) (citations omitted); *accord Schlup*, 513 U.S. at 324 (referring to "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence").

Here, petitioner's innocence claim is not based on the type of new, reliable evidence identified in *Schlup*.  Primarily, petitioner points to evidence that, after his conviction, the victim's

mother, Makeba Taylor, sold his automobile.  Petitioner contends that his evidence supports his defense that the victim and her mother were not credible, and that the charges were fabricated by the victim's mother in order to obtain possession of his property.  This evidence is insufficient to meet the demanding *Schlup* standard, for two reasons.  First, it is largely cumulative to evidence presented at trial.  While petitioner did not present this precise evidence at trial, he did present his defense that the victim's mother fabricated the charges in order to obtain his property, and indeed the victim's mother admitted on cross-examination that she had removed "marital property" from the home even though the evidence established that she and petitioner were not married.  Second, apart from the cumulative nature of the evidence, the evidence merely provides an additional basis upon which to impeach the mother's testimony.  Such newly discovered impeachment evidence does not provide sufficient evidence of actual innocence to overcome a procedural bar, much less does it provide sufficient evidence to support a free-standing innocence claim.  *See Calderon v. Thompson*, 523 U.S. 538, 563 (1998) (newly discovered impeachment evidence, which is "a step removed from evidence pertaining to the crime itself," "provides no basis for finding" actual innocence); *Sawyer v. Whitley*, 505 U.S. 333, 349 (1992) (newly discovered impeachment evidence "will seldom, if ever," establish actual innocence).

In his motion to admit new evidence, petitioner also relies on an affidavit from Leslie Edwards.  Edwards avers that he is petitioner's nephew.  In April 2010, he met Taylor in a nightclub. She told him that she had "put [petitioner] in prison" because he was cheating on her, that she took petitioner's motorcycle and cars "to get something out of the deal," and that she "made her daughter lie in order to get what she wanted."  Pet.'r's Mot. to Admit Newly Evidence Aff., dated 8/29/13, Ex. 1, Aff. of Leslie Edwards, ¶¶ 7-10.  This affidavit likewise fails to demonstrate petitioner's actual

innocence.  New statements from witnesses years after the crime are inherently suspect, *see Schlup*, 513 U.S. at 331, and such statements are to be viewed with "a degree of skepticism." *Herrera*, 506 U.S. at 423 (O'Connor, J., concurring); *see also*, *McCray v. Vasbinder*, 499 F.3d 568, 574 (6th Cir. 2007) (citing *United States v. Willis*, 257 F.3d 636, 645 (6th Cir. 2001).  Likewise, affidavits from family members are to be viewed skeptically.  *See Chavis-Tucker v. Hudson*, 348 Fed. Appx. 125, 134 (6th Cir. 2009).  Further, Edwards is currently serving a 25-50 year sentence of imprisonment imposed in 2011.  *See* MDOC, OFFENDER TRACKING INFORMATION SYSTEM (OTIS)website, at http://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber=222193 (visited Nov. 14, 2013).[4] Edwards's long term of imprisonment reduces the threat of criminal penalty or other sanction which would attach to his statement to render it credible.  *Cf. In re Byrd*, 269 F.3d 561, 574 (6th Cir. 2001). Thus, even if petitioner's actual innocence provided a cognizable basis for habeas relief, petitioner has failed to present the type of new, reliable evidence sufficient to demonstrate that he is actually innocent.

## 2.   *Weight and Sufficiency of the Evidence*

Petitioner also argues that the new evidence establishes that his conviction was against the weight of the evidence, and that the prosecutor presented insufficient evidence to prove his guilt beyond a reasonable doubt.  This claim is without merit.

Petitioner is not entitled to relief on this basis "because *Jackson v. Virginia*, 443 U.S. 307 (1979), requires the court to evaluate the 'record evidence' to determine whether a finding of guilt could be supported.  The [new evidence] was not presented at trial and therefore cannot be

---

[4]Edwards's affidavit includes his MDOC address and inmate number.  Pursuant to FED. R. EVID. 201(c), the Court may take judicial notice of the information provided on OTIS. *See Daly v. Burt*, 613 F. Supp. 2d 916, 920 n.2 (E.D. Mich. 2009) (Murphy, J.); *Ward v. Wolfenbarger*, 323 F. Supp. 2d 818, 821 n. 3 (E.D. Mich. 2004) (Tarnow, J.).

considered in an insufficiency argument." *Thomas v. Cain*, 139 Fed. Appx. 620, 621 (5th Cir. 2005) (parallel and internal citations omitted) (quoting *Jackson*, 443 U.S. at 318); *see also*, *Herrera*, 506 U.S. at 402 (citation omitted) ("[T]he sufficiency of the evidence review authorized by *Jackson* is limited to 'record evidence.' *Jackson* does not extend to nonrecord evidence, including newly discovered evidence."); *Goins v. Angelone*, 52 F. Supp. 2d 638, 678 (E.D. Va. 1999).

To the extent petitioner contends that the evidence adduced at trial, if believed by a jury, was insufficient to prove his guilt beyond a reasonable doubt, the Court should conclude that petitioner is not entitled to habeas relief. The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship*, 397 U.S. 358, 364 (1970). "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). Reviewing courts must view the evidence, draw inferences and resolve conflicting inferences from the record in favor of the prosecution. "[I]t is the responsibility of the jury–not the court–to decide what conclusions should be drawn from the evidence admitted at trial." *Cavazos v. Smith*, 565 U.S. 1, ___, 132 S. Ct. 2, 4 (2011) (per curiam). The *Jackson* standard "leaves juries broad discretion in deciding what inferences to draw from the evidence presented at trial, requiring only that jurors 'draw reasonable inferences from basic facts to ultimate facts.'" *Coleman v. Johnson*, 132 S. Ct. 2060, 2064 (2012) (per curiam) (quoting *Jackson*, 443 U.S. at 319). Likewise, a reviewing court "do[es] not make credibility determinations in evaluating the sufficiency of the evidence." *United State v. Owusu*, 199 F.3d 329, 344 (6th Cir. 2000); *see also*, *United States v. Bailey*, 444 U.S. 394,

24

424-25 (1980) ("It is for [jurors] and not for appellate courts to say that a particular witness spoke the truth or fabricated a cock-and-bull story.").  It is the job of the jury, not this Court sitting on habeas review, to resolve conflicts in the evidence, and this Court must presume that the jury resolved those conflicts in favor of the prosecution.  *See Jackson*, 443 U.S. at 326.  As the Court has explained, "the only question under *Jackson* is whether [the jury's finding] was so insupportable as to fall below the threshold of bare rationality."  *Coleman*, 132 S. Ct. at 2065.

Here, the victim testified that petitioner engaged in both oral sex and sexual intercourse with her.  The victim's mother testified that she walked in on petitioner having sex with the victim.  This testimony, if believed by the jury, was sufficient to establish the elements of the CSC-I charges beyond a reasonable doubt.  *See United States v. Kenyon*, 397 F.3d 1071, 1076 (8th Cir. 2005) ("Even in the face of inconsistent evidence, a victim's testimony alone can be sufficient to support a guilty verdict."); *People v. Lemmon*, 456 Mich. 625, 642 n.22, 576 N.W.2d 129, 137 n.22 (1998) ("It is a well established rule that a jury may convict on the uncorroborated evidence of a CSC victim."); MICH. COMP. LAWS § 750.520h ("The testimony of a victim need not be corroborated in prosecutions under [the criminal sexual conduct statutes].").  The victim's mother also testified that petitioner possessed a handgun, providing sufficient evidence to support the felon-in-possession conviction.  Finally, the victim's mother testified that defendant phoned her several times after his arrest, sometimes threatening her and sometimes offering her money if she refrained from going to court.  This testimony was sufficient to prove the elements of the obstruction of justice charge.

Petitioner argues that the victim and her mother were not credible.  However, as explained above, witness credibility is solely the province of the trier of fact.  A reviewing court may reverse a trier of fact's credibility determinations only where the testimony is incredible as a matter of law,

"such as where it was physically impossible for the witness to observe that which he claims occurred, or impossible under the laws of nature for the occurrence to have taken place at all." *United States v. Radziszewski*, 474 F.3d 480, 485 (7th Cir. 2007) (internal quotation omitted); *accord United States v. Flores*, 572 F.3d 1254, 1263 (11th Cir. 2009); *United States v. Gadison*, 8 F.3d 186, 190 (5th Cir. 1993). Here, it was not physically impossible for the victim or her mother to have observed what they claimed to have observed, nor was their testimony contrary to the laws of nature. The fact that the witnesses may have had a motive to fabricate raises a credibility question to be resolved by the finder of fact, but it does not render their testimony incredible as a matter of law. *See United States v. Alcantar*, 83 F.3d 185, 189 (9th Cir. 1996) ("[T]estimony is not incredible as a matter of law . . . only because the witness may have been impeached . . . by the existence of a motive to provide evidence favorable to the government."). Petitioner also argues that there was no physical evidence presented to support the CSC or firearms charges. This argument is without merit. "Lack of physical evidence does not render the evidence that is presented insufficient." *United States v. Magallanez*, 408 F.3d 672, 681 (10th Cir.2005); *see also*, *O'Hara v. Brigano*, 499 F. 3d 492, 500 (6th Cir. 2007) (victim's testimony alone sufficient even though not corroborated by other witnesses or physical evidence); *United States v. Bieghler*, 198 Fed. Appx. 566, 568 (8th Cir. 2006) ("'[F]orensic evidence' is not required for conviction.").

In short, as noted above, the *Jackson* standard does not permit "fine-grained factual parsing" of the evidence by a reviewing court, *Coleman*, 132 S. Ct. at 2064, nor does it permit this Court to reweigh the conflicts in the evidence or assess the credibility of the witnesses. The jury, as the finder of fact, was free to draw any reasonable inferences from the evidence, and to resolve the conflicts in the evidence in favor of the prosecution. In light of the victim's testimony, the verdict

26

was not "so insupportable as to fall below the threshold of bare rationality." *Coleman*, 132 S. Ct. at 2065.[5]

    3.    *Altered Evidence*

Petitioner also contends that the tape recordings of his phone calls to the victim were altered, and that the altered transcripts were improperly presented to the jury. Petitioner contends that there were "blank spots and erasures" on the audiotape, but does not provide any evidence to support this claim. Further, he does not identify any particular statements that were deleted or altered. Indeed, trial counsel objected to the introduction of the audiotape, but did not do so on the basis that the tape had been altered. *See* Tr., dated 2/5/08, at 7-9; Trial Tr., dated 2/7/08, at 3-10. Counsel did argue that he did not believe that the transcript was 100% accurate, but was unable to identify for the trial court any inaccuracies between the transcript and the recording. *See* Trial Tr., dated 2/11/08, at 6-7. Although petitioner does not point to any specific parts of the transcript that were altered, he does point to specific statements that he contends were misconstrued or taken out of context. However, this does not show that the tape itself was altered in any way. What inferences could be gleaned

---

    [5]To the extent that petitioner argues that he is entitled to habeas relief because the jury's verdict was against the great weight of the evidence, his claim is not cognizable. It is well established that habeas review is not available to correct errors of state law. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Jackson v. Ylst*, 921 F.2d 882, 885 (9th Cir. 1990) (a federal court on habeas review "ha[s] no authority to review a state's application of its own laws."). The federal constitution requires only that the evidence be sufficient to sustain the conviction under the standard established in *Jackson v. Virginia, infra*. Where the evidence is sufficient as a matter of due process, a claim that the verdict was against the weight of the evidence presents a state law issue which is not cognizable on habeas review. *See Douglas v. Hendricks*, 236 F. Supp. 2d 412, 435-36 (D.N.J. 2002); *Dell v. Straub*, 194 F. Supp. 2d 629, 648 (E.D. Mich. 2002) (Friedman, J.); *Correa v. Duncan*, 172 F. Supp. 2d 378, 381 (E.D.N.Y. 2001); *cf. Tibbs v. Florida*, 457 U.S. 31, 44 (1982) (noting in a different context that "trial and appellate judges commonly distinguish between weight and sufficiency of the evidence."). In short, "[a] federal habeas court has no power to grant habeas corpus relief because it finds that the state conviction is against the 'weight of the evidence.'" *Young v. Kemp*, 760 F.2d 1097, 1105 (11th Cir. 1985).

from petitioner's statements in the call to the victim's mother were a subject for fair argument by the parties, and indeed the parties argued extensively as to how those statements should be construed by the jury. *See* Trial Tr., dated 2/11/08, at 185-87, 207-09, 217. As the trial court correctly noted, this determination of the meaning of petitioner's statements was for the jury to decide. *See* Trial Ct. op., at 10. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

4.    *Obstruction of Justice Charge*

Petitioner next contends that he was improperly charged with obstruction of justice. Petitioner was charged with the common law crime of obstruction of justice under the general provision of Michigan law preserving common law crimes, which provides: "Any person who shall commit any indictable offense at the common law, for the punishment of which no provision is expressly made by any statute of this state, shall be guilty of a felony . . . ." MICH. COMP. LAWS § 750.505. Petitioner contends that he was improperly charged under this provision, because a specific statute prohibits obstruction of justice, *see* MICH. COMP. LAWS § 750.483a, and a specific statute prohibits witness intimidation, *see* MICH. COMP. LAWS § 750.122. Petitioner contends that in light of these specific statutory provisions, it was improper to charge him with the common law crime of obstruction of justice under § 750.505. This claim is without merit.

A prosecutor has broad discretion in deciding what charges to pursue, and the prosecutor's charging decisions are generally not subject to review by the courts. "[S]o long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file . . . generally rests entirely in [the prosecutor's] discretion." *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978). Further, whether an obstruction

28

of justice may be charged under § 750.505 presents an issue of state law that is not cognizable on habeas review. *Cf. Jones v. Painter*, 140 F. Supp. 2d 677, 679 (N.D. W. Va. 2001). And the Michigan courts have held that common law obstruction of justice may be properly charged under § 750.505. *See People v. Meissner*, 294 Mich. App. 438, 454, 812 N.W.2d 37, 47 (2011). Thus, petitioner's claim that he was improperly charged under § 750.505 is without merit.

Likewise, petitioner cannot show any error in the trial court's jury instructions on the obstruction charge. The trial court instructed the jury on the elements of the common law obstruction of justice charge, *see* Trial Tr., dated 2/11/08, at 228-29, and defense counsel explicitly agreed to this instruction, *see id*. at 219-20. Petitioner does not identify any error in the court's instruction that did not accurately inform the jury of the elements of the offense. Rather, petitioner contends that he should have received more specific instructions under the more specific statutes relating to obstruction of justice. As the common law crime was properly charged under § 750.505, however, petitioner was only entitled to the instructions that set forth the elements of that crime. Because the trial court's instructions did so, petitioner is not entitled to habeas relief on this claim.

     5.    <u>*Brady*</u>

Petitioner also argues that the prosecution withheld exculpatory evidence. This claim is without merit. The Due Process Clause requires the state to disclose exculpatory evidence to the defense. *See Brady v. Maryland*, 373 U.S. 83 (1963). "There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). Thus, in order to establish a *Brady* claim, petitioner must show that: (1) evidence was

suppressed by the prosecution in that it was not known to petitioner and not available from another source; (2) the evidence was favorable or exculpatory; and (3) the evidence was material to the question of petitioner's guilt. *See Carter v. Bell*, 218 F.3d 581, 601 (6th Cir. 2000); *Luton v. Grandison*, 44 F.3d 626, 628-29 (8th Cir. 1994); *see also*, *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999); *Moore v. Illinois*, 408 U.S. 786, 794-95 (1972). Petitioner bears the burden of establishing each of these three elements. *See Carter*, 218 F.3d at 601.

Here, petitioner has not pointed to any exculpatory evidence that was withheld by the prosecution. Petitioner notes that the victim's mother had a criminal history in New York, and may have had other motives (*i.e.*, petitioner's involvement with other women or her desire to obtain his property) for making her accusations. As the trial court correctly observed, however, "the jury heard this evidence at trial," and this evidence "was the substance of the defense presented to the jury." Trial Ct. op., at 12. Thus, this evidence was not suppressed. Petitioner contends that the prosecution did not disclose that it knew the charges were a sham and knew Taylor's real intent in making the charges, but petitioner has pointed to no evidence revealing these facts that the prosecutor suppressed. Rather, petitioner simply argues that, based on his interpretation of the evidence and his view of Taylor's credibility, the prosecutor must have known Taylor's "true" motive. This argument fails to show that the prosecutor suppressed any material, exculpatory evidence.

Petitioner also suggests that the prosecutor failed to disclose the existence of an immunity agreement between the prosecutor and Taylor. He bases this claim on the fact that Taylor was never prosecuted for her post-conviction conversion of his property. However, petitioner has failed to show that such an immunity agreement existed. In the absence of any evidence of an actual agreement, either express or implied, between the prosecutor and Taylor, petitioner's claim

30

necessarily fails. *See Black v. Collins*, 962 F.2d 394, 406-07 (5th Cir. 1992); *Zuern v. Tate*, 101 F. Supp. 2d 948, 971 (S.D. Ohio 2000). Further, there is nothing to suggest that such an agreement existed at the time of petitioner's trial, as the alleged criminal activity on the part of Taylor had not yet occurred. It would have been passing strange for the prosecution to grant Taylor immunity for a crime she had not yet committed, and nothing in the record suggests that the prosecutor did so.

Finally, petitioner suggests that the prosecutor knew that Taylor was lying, and thus presented perjured testimony. It is well established that "a conviction obtained by the knowing use of perjured testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *United States v. Agurs*, 427 U.S. 97, 103 (1976) (footnote omitted); *accord Napue v. Illinois*, 360 U.S. 264, 271 (1959). This is true whether the false testimony goes to the defendant's guilt or to a witness's credibility, *see Napue*, 360 U.S. at 270, and it matters not whether the prosecution directly elicits the false testimony or merely allows false testimony to go uncorrected, *see id.* at 269. To succeed on this claim petitioner must show that: (1) the prosecutor presented evidence which was false; (2) the prosecutor knew of the falsity; and (3) the evidence was material. *See Coe v. Bell*, 161 F.3d 320, 343

With respect to the first element, it is well established that petitioner bears the burden of proving that the testimony amounted to perjury. As the Fourth Circuit has explained, "[a] defendant seeking to vacate a conviction based on perjured testimony must show that the testimony was, indeed, perjured. Mere inconsistencies in testimony by government witnesses do not establish the government's knowing use of false testimony." *United States v. Griley*, 814 F.2d 967, 971 (4th Cir. 1987); *accord United States v. Verser*, 916 F.2d 1268, 1271 (7th Cir. 1990) ("[N]ot every

31

testimonial inconsistency that goes uncorrected by the government establishes a constitutional violation."); *Horton v. United States*, 983 F. Supp. 650, 657 (E.D. Va. 1997); *United States v. Hearst*, 424 F. Supp. 307, 318 (N.D. Cal. 1976). As the *Verser* court further explained, to establish a constitutional violation petitioner must show that the "inconsistent testimony amounted to perjury, 'the willful assertion under oath of a false, material fact.'" *Verser*, 916 F.2d at 1271 (quoting *Carey v. Duckworth*, 738 F.2d 875, 878 (7th Cir. 1984)); *see also*, *Horton*, 983 F. Supp. at 657 (quoting *United States v. Smith*, 62 F.3d 641, 646 (4th Cir. 1995)) (in order to establish *Napue* violation defendant must show that the government knowingly used perjured testimony, perjury being "false testimony concerning a material matter, 'given with the willful intent to deceive (rather than as a result of, say, confusion, mistake, or faulty memory.'"). In other words, petitioner must show that the testimony was "indisputably false." *Byrd v. Collins*, 209 F.3d 486, 817-18 (6th Cir. 2000).

With respect to the second element, as the Sixth Circuit has explained in order for a witness's perjury at trial to constitute a basis for habeas relief, the petitioner must show "prosecutorial involvement in the perjury." *Burks v. Egeler*, 512 F.2d 221, 229 (6th Cir. 1975). The Sixth Circuit has repeatedly reaffirmed the requirement that a petitioner show prosecutorial involvement in or knowledge of the perjury. *See, e.g.*, *Rosencrantz v. Lafler*, 568 F.3d 583-84 (6th Cir. 2009); *Byrd v. Collins*, 209 F.3d 486, 517-18 (6th Cir. 2000); *King v. Trippett*, 192 F.3d 517, 522 (6th Cir. 1999); *Coe v. Bell*, 161 F.3d 320, 343 (6th Cir. 1998); *Ford v. United States*, No. 94-3469, 1994 WL 521119, at *2 (6th Cir. Sept. 23, 1994); *Akbar v. Jago*, No. 84-3540, 1985 WL 13195, at *1 (6th Cir. Apr. 10, 1985); *Roddy v. Black*, 516 F.2d 1380, 1383 (6th Cir. 1975). And the Supreme Court has repeatedly characterized the Due Process Clause only as barring conviction on the basis of perjury known by the prosecution to be such. *See, e.g.*, *Napue v. Illinois*, 360 U.S. 264, 269 (1959)

32

(emphasis added) ("[I]t is established that a conviction obtained through use of false evidence, *known to be such by representatives of the State*, must fall under the Fourteenth Amendment."); *United States v. Agurs*, 427 U.S. 97, 103 (1976) (emphasis added) (due process is violated by the "*knowing* use of perjured testimony."); *see id*. at 103-04 & nn. 8-9 (discussing cases).   At a minimum, "[t]he Supreme Court has never held that due process is offended by a conviction resting on perjured testimony where the prosecution did not know of the testimony's falsity at trial." *LaMothe v. Cademartori*, No. C 04-3395, 2005 WL 3095884, at *5 (N.D. Cal. Nov. 11, 2005) (citing *Jacobs v. Scott*, 513 U.S. 1067 (1995) (Stevens, J., dissenting from denial of certiorari) (noting that the Supreme Court has yet to consider the question of whether due process is violated by a conviction based on perjured testimony regardless of the prosecutor's knowledge)); *cf. Briscoe v. LaHue*, 460 U.S. 325, 326 n. 1 (1983) ("The Court has held that the prosecutor's knowing use of perjured testimony violates due process, but has not held that the false testimony of a police officer in itself violates constitutional rights.").

Here, petitioner has not shown that Taylor's testimony amounted to perjury.  To be sure, he has offered a different view of the evidence, one under which it is plausible that Taylor committed perjury.  That is only one view of the evidence, however, and that view was presented to and rejected by the jury.  Petitioner has presented no further evidence that demonstrates that Taylor's testimony at trial amounted to perjury.  Moreover, even if Taylor lied, the record is devoid of any evidence that the prosecutor knew that Taylor was lying.  In the absence of any evidence of prosecutorial knowledge, petitioner is not entitled to habeas relief.

H.     *Recommendation Regarding Certificate of Appealability*

1.     *Legal Standard*

As amended by the Antiterrorism and Effective Death Penalty Act, section 2253 provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1). The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). As the Sixth Circuit has noted, this language represents a codification of the Supreme Court's decision in *Barefoot v. Estelle*, 463 U.S. 880 (1983), and "[t]he AEDPA thus makes no change to the general showing required to obtain a certificate[.]" *Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1073 (6th Cir. 1997); *accord Slack v. McDaniel*, 529 U.S. 473, 483 (2000). Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue. Rather, the courts that have considered the issue have concluded that "'[a] substantial showing requires the applicant to "demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further.""' *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996) (quoting *Barefoot*, 463 U.S. at 893 n.4)); *accord Slack*, 529 U.S. at 483-84. Although the substantive standard is the same, "[t]he new Act does, however, require that certificates of appealability, unlike the former certificates of probable cause, specify which issues are appealable." *Lyons*, 105 F.3d at 1073. (citing 28 U.S.C. § 2253(c)(3)).

Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court

must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."
Rule 11(a), 28 U.S.C. foll. § 2254.  The rule tracks § 2253(c)(3)'s requirement that any grant of a
certificate of appealability "state the specific issue or issues that satisfy the showing required by §
2253(c)(2)," Rule 11(a), but omits the requirement contained in the pre-amendment version of
Federal Rule of Appellate Procedure 22(b)(1) that the court explain "why a certificate should not
issue."  FED. R. APP. P. 22(b)(1) (version effective prior to 2009 amendment); *see id.*, advisory
committee note, 2009 amendments.  In light of the new Rule 11 requirement that the Court either
grant or deny the certificate of appealability at the time of its final adverse order, I include a
recommendation regarding the certificate of appealability issue here.

    2.    *Analysis*

If the Court accepts my recommendation regarding the merits of petitioner's claims, the
Court should also conclude that petitioner is not entitled to a certificate of appealability, for the
reasons explained above.  It is clear that petitioner's other acts evidence claim does not raise a
cognizable basis for habeas relief, and thus the resolution of petitioner's evidentiary claim is not
reasonably debatable.  When viewed in context, the prosecutor's comments were not improper and
did not prejudice petitioner, and thus the resolution of petitioner's prosecutorial misconduct and
related ineffective assistance of counsel claims is not reasonable debatable.  Petitioner's actual
innocence claim does not raise a cognizable basis for habeas relief, and in any event petitioner has
failed to present the type of new, compelling evidence sufficient to demonstrate his innocence, and
thus the resolution of this claim is not reasonably debatable.  Because the testimony of the victim
and the victim's mother was more than sufficient, if believed by the jury, to establish the elements
of the offenses for which petitioner was convicted, the resolution of petitioner's sufficiency of the

evidence claim is not reasonably debatable. Petitioner's challenge to the obstruction of justice charge raises a state law claim that is not cognizable on habeas review and, in any event, the claim is without merit, and thus the resolution of this claim is not reasonably debatable. Finally, because petitioner has failed to show that the prosecution presented any altered evidence or suppressed any exculpatory evidence, the resolution of these claims is not reasonably debatable. Accordingly, the Court should conclude that petitioner is not entitled to a certificate of appealability.

I.    *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law. Accordingly, the Court should deny petitioner's application for the writ of habeas corpus. If the Court accepts this recommendation, the Court should also deny petitioner a certificate of appealability.

III.    NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any

objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.


                              s/Paul J. Komives
                              PAUL J. KOMIVES
                              UNITED STATES MAGISTRATE JUDGE
Dated: November 20, 2013


                    CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on November 20, 2013.


                              s/Jane Johnson
                              Deputy Clerk